UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dwayne Wilson,<br><br>     Plaintiff,<br><br> —v—<br><br>The City of New York,<br><br>     Defendant. | 15-cv-7368 (AJN)<br>15-cv-7369 (AJN)<br><br>MEMORANDUM<br>OPINION & ORDER |

ALISON J. NATHAN, District Judge:

In these civil rights actions, Plaintiff Dwayne Wilson has filed *Monell* claims against the City of New York in connection with two separate incidents in which, he alleges, he was falsely arrested. The Defendant City of New York has moved for summary judgment in both cases. For the reasons that follow, both motions for summary judgment are granted.

I. **Background**

 A. **July 13, 2013 Arrest (15-cv-7368)**

On July 13, 2013 at approximately 3:43 p.m., Officer Edwin Minaya and his partner received a call for a domestic dispute in the vicinity of 450 East 105. D. 56.1 Statement ("-68 D. 56.1"), No. 15-cv-7368, Dkt. No. 129-1, ¶ 3; Minaya Dep. Tr., No. 15-cv-7368, Dkt. No. 128-2, at 30:12-31:6. When the officers arrived at the location, a female ("M.M.") approached the officers and told them that she was the one who had called the police. -68 D. 56.1 ¶ 4; Minaya Dep. Tr. at 39:23-40:25. M.M. subsequently told the police several different stories about her ex-boyfriend, the Plaintiff, throwing her car and apartment keys somewhere outside where she could not find them. -68 D. 56.1 ¶ 5; P. 56.1, No. 15-cv-7369, Dkt. No. 113, ¶ 2. These stories included that the Plaintiff had stolen her keys out of her hand and threw them away not in her

presence and her witnessing the Plaintiff throw her keys in the street. P. 56.1 ¶ 2.[1] The officers became aware that M.M. had argued with the Plaintiff and had thrown him out of the house prior to making a police complaint. P. 56.1 ¶ 3; *see also* -68 D. 56.1 ¶ 5. M.M. completed a supporting deposition for the officers stating that after arguing, the Plaintiff "said he was leaving [and] started packing and I asked for my house and car keys . . . which he refused to give back," and that the Plaintiff thereafter "tossed my car key in the street." Police Report, No. 15-cv-7368, Dkt. No. 128-5; *see also* -68 D. 56.1 ¶ 7. Officer Minaya asked M.M. for a description of the man who threw her keys and she pointed out the Plaintiff, who was crossing the street. -68 D. 56.1 ¶ 8; Minaya Dep. Tr. at 46:14-47:24. The Plaintiff was subsequently arrested for Petit Larceny. -68 D. 56.1 ¶ 12; P. 56.1 ¶ 6.

### B. October 9, 2013 Arrest (15-cv-7369)

On or about September 3, 2013, an employee of the North Central Bronx Hospital reported to the police that her purse was stolen by an unknown individual at the hospital. D 56.1 ("-69 D. 56.1"), No. 15-cv-7369, Dkt. No. 109-1, ¶ 3; P. 56.1 ¶ 8; NYPD Complaint, No. 15-cv-7369, Dkt. No. 113-2. At some point, the complainant ("D.R.") provided the detective in charge, Detective Pastor Ramirez, with the Plaintiff's name as a person who may have stolen her purse. -69 D. 56.1 ¶ 7; P. 56.1 ¶ 11; Ramirez Dep. Tr., No. 15-cv-7369, Dkt. No. 108-2, at 147:2-23. On September 29, 2013, Detective Ramirez conducted two photo array lineups with D.R. -69 D. 56.1 ¶ 8. At this time, D.R. said she had interacted with the thief before the theft and identified him as a dark-skinned male. P. 56.1 ¶ 10. D.R. picked the Plaintiff's photo out of the arrays,

---

[1] The Defendant argues that the Plaintiff's 56.1 statements should be stricken because they "contain[], almost exclusively, unsupported conclusions and his counsel's own arguments" and "cite[] to non-existent evidence." D. Reply, Dkt. No. 117, at 2-3. While the Court agrees that the Plaintiff's statements do not comport with Local Rule 56.1, the Court finds it unnecessary strike them because, even accepting these statements as true, the Plaintiff has not raised a triable issue that would preclude summary judgment.

2

indicating that he had stolen her purse. -69 D. 56.1 ¶ 9. On October 9, 2013, the Plaintiff went to speak to the detectives and voluntarily agreed to be placed in a line-up. -69 D. 56.1 ¶¶ 13-15. D.R. picked the Plaintiff out of the lineup, and the Plaintiff was arrested for Grand Larceny in the Third Degree. -69 D. 56.1 ¶¶ 16-17. Surveillance video of the hospital was viewed after the arrest, and after it was viewed, charges against the Plaintiff were dropped. P. 56.1 ¶ 14.

### C. Procedural History

The Plaintiff filed complaints against the City of New York and several John and Jane Smith officers in connection with both of the above-mentioned arrests on September 17, 2015. No. 15-cv-7368, Dkt. No. 1; No. 15-cv-7369, Dkt. No. 1. He subsequently filed amended complaints in both actions on March 14, 2016. First Amended Complaint, No. 15-cv-7368, Dkt. No. 28; First Amended Complaint, No. 15-cv-7369, Dkt. No. 26. The Plaintiff moved to further amend his complaints to substitute the actual names of several Smith defendants. On April 4, 2017, Magistrate Judge Parker filed a Report and Recommendation counseling that both motions to amend should be denied because any claims against individual officers would be untimely. Report & Recommendation, No. 15-cv-7368, Dkt. No. 87. The Court adopted the Report and Recommendation on June 19, 2017. Order, No. 15-cv-7368, Dkt. No. 107. As a result, only the Plaintiff's *Monell* claims against the City of New York remain.

On December 29, 2017, the Defendant moved for summary judgment in both cases. No. 15-cv-7368, Dkt. No. 127; No. 15-cv-7369, Dkt. No. 107. The Court now considers those motions and will grant them both.

## II. Legal Standard

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to

3

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

### III. The Plaintiff Has Not Presented Evidence Supporting His *Monell* Claims

In his amended complaints, the Plaintiff alleges that the City of New York "had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers and of failing to inform the individual Defendants' supervisors of their need to train, screen, supervise, or discipline said Defendants" and that these

policies resulted in a deprivation of his constitutional rights. First Amended Complaint, No. 15-cv-7368, Dkt. No. 28, ¶ 17; *accord* First Amended Complaint, No. 15-cv-7369, Dkt. No. 26, ¶ 17. The Plaintiff has presented no evidence that such a policy, practice, or custom exists, nor that such a policy, practice, or custom caused the Plaintiff to be falsely arrested. Therefore, the motions for summary judgment are granted.

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In other words, "municipalities are 'responsible only for their own illegal acts,' and cannot be held 'vicariously liable under § 1983 for their employees' actions.'" *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). To sustain a *Monell* claim, a plaintiff "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* (quoting *Connick*, 563 U.S. at 60).

"[T]he actions of subordinate employees do not, in and of themselves, constitute a 'custom' or 'practice . . . .'" *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). However, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under § 1983.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 388). To establish deliberate indifference for a failure train or supervise claim, the plaintiff must show (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "that the

wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). Moreover, the municipal actor must have had "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61.

To establish a *Monell* claim, "a plaintiff must do more than simply state that a municipal policy or custom exists." *Santos*, 847 F. Supp. 2d at 576. Deliberate indifference may be proven through "proof of repeated complaints of civil rights violations" if "the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Such claims put the City on notice even if the complaints are ultimately not meritorious. *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986). "Deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was 'contrary to the practice of most . . . departments' and was 'particularly dangerous' because it presented an unusually high risk that constitutional rights would be violated." *Vann*, 72 F.3d at 1049.

In the present case, there is no evidence of a policy or custom of failing to hire, train, or supervise officers. The Defendant has provided evidence, which the Plaintiff does not dispute, that officers receive significant training regarding probable cause to arrest an individual and how to interview complainants. The Defendant's evidence includes excerpts of the New York City Police Department Patrol and Detective Guide instructing officers on how to investigate complaints, Patrol Guide, No. 15-cv-7368, Dkt. No. 128-6, excerpts of the Police Student's Guide given to officers at the police academy discussing when officers have probable cause to arrest a suspect, Police Student's Guide, No. 15-cv-7368, Dkt. No. 128-7, and the deposition of

Police Officer Shurland Marshall explaining that the police academy teaches case law regarding probable cause during one to two days dedicated exclusively to that subject and that additional tutoring is available to officers on a voluntary basis, Marshall Dep. Tr., No. 15-cv-7368, Dkt. No. 128-3, at 13:5-15:25, 31:9-17, 37:8-18. The Defendant also includes the deposition of Lieutenant Commander Ralph Cilento, in which he describes the training detectives receive regarding how to conduct an investigation in cases involving complaining witnesses. Cilento Dep. Tr., No. 15-cv-7368, Dkt. No. 128-4, at 13:20-14:25, 55:2-58:20, 67:4-89:13.

In response to this evidence, the Plaintiff does not allege that any particular deficiency existed in these training programs, nor does he point to any evidence in the record that the City was on notice that such a deficiency caused the deprivation of citizens' constitutional rights. As a result, he has not raised any triable issue of fact that would preclude summary judgment. *See Connick*, 563 U.S. at 61. Nor does the Plaintiff identify any evidence tending to prove that employees regularly mishandle questions of the existence of probable cause or interviewing complaining witnesses, thereby causing the deprivation of citizens' constitutional rights. *See Walker*, 974 F.2d at 297. Instead, the Plaintiff devotes his entire opposition memorandum to outlining the alleged failures by Officers Minaya and Detective Ramirez in the specific incidents he faced. However, the isolated actions of two officers "do not, in and of themselves, constitute a 'custom' or 'practice.'" *Santos*, 847 F. Supp. 2d at 576. Moreover, the Plaintiff's Rule 56.1 statements tend to prove that even if these individual officers acted improperly in their investigation and arrest of the Plaintiff, they did so in violation of established policy. For example, the Plaintiff states that "Officer Minaya admitted that proper procedure for a domestic dispute is for the officer to try to get the other side of the story, and if it is a he said she said without any further evidence, they do not make an arrest." P. 56.1 ¶ 4; *see also* P. 56.1 ¶ 1

("Ramirez admitted that when a police officer is faced with a complainant and an accused telling different stories, you have to determine who is telling the truth and who is lying before establishing probable cause; you have to follow up on the investigation.").

Because the Defendant has successfully demonstrated the absence of a genuine issue of material fact and that no reasonable juror could find for the Plaintiff on his claims for municipal liability, the motions for summary judgment are granted.

### IV. Plaintiff Has No Claim for False Arrest

Plaintiff argues in passing that he still has viable state law claims for false arrest and that the City can thus be held liable under a theory of *respondeat superior*. P. Opp., No. 15-cv-7369, Dkt. No. 114, at 22. However, these claims were alleged against the individual John Smith officers, and this Court adopted the recommendation of Judge Parker and concluded that the claims could not be brought against the actual officers in this action because the claims were time-barred. *See* Report and Recommendation; Order, No. 15-cv-7368, Dkt. No. 107 (adopting Report and Recommendation). The Plaintiff thus has no remaining claim for false arrest in this action. Moreover, the City of New York is the only defendant currently in either case, and an employer cannot be held liable based on *respondeat superior* when there are no claims against the individual employees. *Abdullajeva v. Club Quarters, Inc.*, No. 96-cv-0383 (LMM), 1996 WL 497029, at *8 (S.D.N.Y. Sept. 3, 1996).

### V. Conclusion

Defendant's motions for summary judgment are granted. This resolves docket number 127 (15-cv-7368) and docket number 107 (15-cv-7369). The Clerk of Court is directed to close the cases and enter judgment in favor of the Defendant.

SO ORDERED.

Dated: September 26, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge